UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  10-60349-CIV-MARTINEZ-BROWN

STEVEN DIPASQUALE, individually and on
behalf of all others similarly situated,

    Plaintiff,

vs.

DOCUTEK IMAGING SOLUTIONS, INC., a
Florida corporation, STEVEN D. STALLER,
individually, and GABRIELLE
WARRINGTON, individually,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S STATE LAW CLAIM

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (D.E. No. 33).  Plaintiff Steven Dipasquale ("Plaintiff") is a former employee of Defendant Docutek Imaging Solutions, Inc. ("Defendant" or "Docutek").  Plaintiff alleges that Defendant Steven D. Staller ("Defendant" or "Staller") and Defendant Gabrielle Warrington ("Defendant" or "Warrington") owned and operated Docutek and were his employers.  Plaintiff has filed suit alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and section 448 of the Florida statutes.  Defendants have moved for summary judgment, arguing that no genuine issues of material fact remain.  After careful consideration and for the reasons set forth below, the Court grants Defendants' motion with regard to Plaintiff's FLSA claims and dismisses without prejudice Plaintiff's state law claim.

I.      **Background**

Plaintiff was the service manager for Docutek from approximately December 2001 until approximately January 19, 2010. (D.E. No. 51 at ¶ 5(b)).  The details of Plaintiff's position as service manager are discussed in the Analysis section of this Order.  Plaintiff has filed a four-count complaint against Defendants.  In Count I, Plaintiff alleges a violation of the FLSA for failure to pay the minimum wage.  (D.E. No. 22 at 4).  In Count II, Plaintiff alleges a violation of section 448 of the Florida Statutes, stating that Defendants failed to pay Plaintiff his wages in the form of commissions.  *Id*. at 5.  In Count III, Plaintiff alleges a violation of the FLSA for failure to pay overtime compensation, and finally, in Count IV, Plaintiff asks for a declaratory judgment declaring that Defendants acted willfully in violating the FLSA.  *Id*. at 5-6.  Defendants have now moved for summary judgment on all counts.

II.     **Legal Standard**

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S.

at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the

nonmoving party's case." *Id*. at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III.     Analysis

Defendants have moved for summary judgment, arguing that Plaintiff is exempt from the FLSA, that Defendant Warrington is not Plaintiff's employer, and that with regard to Plaintiff's claims for unpaid commissions, Plaintiff has been fully paid for his wages. After careful consideration and for the reasons set forth below, the Court finds that Plaintiff is an exempt employee and grants summary judgment on Plaintiff's FLSA claims. The Court finds it unnecessary to reach Plaintiff's argument that Defendant Warrington was not Plaintiff's employer and dismisses without prejudice Plaintiff's state law claim relating to unpaid commissions.

#### A.     Executive Exemption

First, the Court finds that Plaintiff is exempt from the FLSA. Defendants argue that Plaintiff is exempt from the FLSA under the executive exemption. The FLSA generally requires the payment of overtime wages and a minimum wage to employees employed by employers who meet certain requirements. *See* 29 U.S.C. §§ 206(a), 207(a). The FLSA exempts from this requirement employees employed in a "bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The Department of Labor regulations define "[t]he term 'employee employed in a bona fide

executive capacity' as an employee:"

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  "Exemptions under the FLSA, however, are to be construed narrowly." *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965 (11th Cir. 1997).  "[T]he employer has the burden of showing that it is entitled to the exemption." *Id*.

It is undisputed that Plaintiff earned more that $455.00 a week as required by section 541.100(a)(1).  The parties, however, disagree as to what the evidence in the record shows with regard to the other three requirements of the executive exemption.  The Court finds there are no genuine issues of material fact with regard to the remaining three elements.  Summary judgment is granted in favor of Defendants on Plaintiff's FLSA claims as Plaintiff is an exempt executive.

### 1. Primary Duty of Management

In determining whether Plaintiff's "primary duty . . . [was] management" the Court must consider whether Plaintiff performed management activities and whether such activities were Plaintiff's primary duty.  First, the Court considers whether Plaintiff performed management activities.  The Department of Labor regulations state with regard to management that

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates

> of pay and hours of work; directing the work of employees; maintaining production
> or sales records for use in supervision or control; appraising employees'
> productivity and efficiency for the purpose of recommending promotions or other
> changes in status; handling employee complaints and grievances; disciplining
> employees; planning the work; determining the techniques to be used; apportioning
> the work among the employees; determining the type of materials, supplies,
> machinery, equipment or tools to be used or merchandise to be bought, stocked and
> sold; controlling the flow and distribution of materials or merchandise and
> supplies; providing for the safety and security of the employees or the property;
> planning and controlling the budget; and monitoring or implementing legal
> compliance measures.

29 C.F.R. § 541.102.

The Court finds that Plaintiff performed management activities. Plaintiff was the service manager for Docutek.[1] (D.E. No. 51 at ¶ 5(b)). As Service Manager, Plaintiff testified that he generally oversaw "the running of the service department." (D.E. No. 34-1, Plaintiff's Depo. at 25). During the relevant time period, there were anywhere from fifteen to twenty-five employees in the service department. *Id*. at 26-27. Plaintiff, as the service manager, for the most part did not go out into the field like other service technicians but stayed in the office and handled customer complaints over the phone in addition to performing other tasks. *Id*. at 30; (D.E. No. 42-1, Plaintiff's Aff. at ¶¶ 7, 18, 19).[2]

As part of his job, Plaintiff interviewed potential service technicians. (D.E. No. 34-1, Plaintiff's Depo. at 34-36). Defendant Staller also interviewed the candidates, however, a

---

[1] The Court acknowledges that Plaintiff's title is not determinative of whether or not he performed management activities. *See Wagner v. Murphy Oil USA, Inc.*, 139 Fed. Appx. 131, 132 (11th Cir. 2005).

[2] The Court acknowledges that Defendants have argued that Plaintiff's affidavit is improper because it conflicts with his deposition testimony. The Court disagrees and finds that this affidavit does not directly contradict Plaintiff's testimony in his deposition.

majority of the time the interview with Plaintiff was longer. *Id*. at 36.[3]  Staller would then confer with Plaintiff with regard to the interviewee. *Id*. at 35.

Although Plaintiff did not actually set and adjust the employees' rates or hours of work, Plaintiff did make recommendations regarding employees's pay and position. *Id*. at 33; *see also* (D.E. No. 42-1, Plaintiff's Aff. at ¶¶ 10, 11).  Plaintiff testified that final approval had to come from either "Rick Staller, Steve Staller, [or] Gabrielle Staller" but that his recommendation was generally accepted, and it was only on "a few occasions" that they did not go with his recommendation.  (D.E. No. 34-1, Plaintiff's Depo. at 33).

Plaintiff also directed the work of employees.  Plaintiff communicated with his employees on a daily basis. *Id*. at 28.  Plaintiff had the authority to change an employee's duties if necessary. Plaintiff testified that he put one service technician on light duty after reviewing a note from that technician's doctor. *Id*. at 32-33.  Plaintiff also testified that once a month or once every two months he would go to the Miami office to check on the technicians "to make sure everybody was being on point like they were supposed to." *Id*. at 47.

Plaintiff also appraised employees's productivity and efficiency for the purpose of recommending promotions.  Plaintiff testified that he evaluated technicians. *Id*. at 37.  In addition, as previously stated, he made recommendations with regard to pay and position, and his superiors usually did what he recommended. *Id*. at 33.

Plaintiff also disciplined employees.  Plaintiff testified that he could reprimand technicians. *Id*. at 37.  For example, Plaintiff suspended an employee after he received a call from

---

[3]Plaintiff testified that in "one out of four interviews" or twenty-five percent of the time, Staller's interview would last longer.

a customer complaining about this particular technician. *Id*. at 38; *see also* (D.E. No. 34-1, Exh. 7 to Plaintiff's Depo.).[4] Although Plaintiff did not actually fire employees, he did recommend that employees be terminated. *Id*. at 38-39, 55-56; *see also* (D.E. No. 42-1, Plaintiff's Aff. at ¶¶ 10, 11). It was only on "a couple of occasions" that Plaintiff's recommendation was overruled. (D.E. No. 34-1, Plaintiff's Depo. at 39).

Finally, Plaintiff also apportioned work among his employees. Plaintiff testified that the first thing he did every morning was look to see which of his employees "might be too busy . . . [and then he would] move some things around if we needed to, call-wise." *Id*. at 29. Plaintiff also had the authority to transfer an employee to a different district. *Id*. at 31. He testified that he moved one technician to Miami full time because Docutek was "down technicians in the Dade County area . . .[a]nd instead of every morning . . . [the technician] reporting to Deerfield to find out he has to go all the way to Dade, it just made more sense to just let him start down there." *Id*.

Plaintiff has submitted an affidavit addressing a number of factors in the management definition in section 541.102 that were not addressed in his deposition. The Court, however, finds it insignificant that Plaintiff did not train employees, did not maintain production or sales records, did not determine the type of materials, supplies, machinery or tools employees used or that the company should have bought, stocked or sold, that Plaintiff did not control the flow of materials or merchandise,[5] that Plaintiff did not provide for employees' safety and protection of property, or that Plaintiff did not have any involvement with the budget or legal compliance issues. Section

---

[4]Plaintiff also testified that although he had the authority to suspend an employee "Steven Staller could veto that and unwind that." (D.E. No. 34-1, Plaintiff's Depo. at 39).

[5]Plaintiff does state, however, that one of his main duties was "locating supplies that the company was not in possession of" and "locating parts." (D.E. No. 42-1, Plaintiff's Aff. at ¶ 7).

541.102 is a list of possible activities for the Court to consider in assessing whether or not Plaintiff acted as a manager. Plaintiff does not have to perform all of these activities; nor is this list the entire range of activities that qualify as management activities. *See* 29 C.F.R. § 541.102 (stating that the term "'management' includes, but is not limited to" and then listing the activities). As discussed above, it is clear and undisputed that Plaintiff performed management activities.[6]

The next question is whether these management activities were Plaintiff's primary duties. The regulations also define "primary duty."

> To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). Here, the Court finds that management was Plaintiff's primary duty.

With regard to the relative importance of the exempt duty as compared with other types of duties, the Court finds it is clear that Plaintiff performed significant managerial duties in comparison to his other duties. In his affidavit Plaintiff states that his other duties were

---

[6] In his affidavit, Plaintiff also states that he believed his "position was that of a non-exempt employee who was entitled to overtime compensation." (D.E. No. 42-1, Plaintiff's Aff. at ¶ 4). The court, however, finds Plaintiff's beliefs on this point are immaterial and irrelevant. The Court also finds it insignificant that Plaintiff does not "have a prolonged course of specialized study culminating in a degree that would assist me in any purported managerial role." *Id*. at ¶ 8. Whether Plaintiff had a management degree is immaterial and irrelevant to the Court's inquiry.

"handling customer complaints via telephone, locating supplies that the company was not in possession of, locating parts, [and] performing "set-ups" on machines to get them up and running." (D.E. No. 42-1, Plaintiff's Aff. at ¶ 7). In comparison, Plaintiff performed a number of significant managerial duties which included interviewing potential service technicians, conferring with Defendant Staller regarding these potential technicians, making recommendations regarding employees's pay and position, directing the work of employees, appraising employees's productivity and efficiency for the purpose of recommending promotions, disciplining employees, making recommendations that certain employees be terminated, and apportioning work among employees. (D.E. No. 34-1, Plaintiff's Depo. at 29, 31-39, 47, 55-56). The Court finds Plaintiff's managerial duties which involved substantial authority over the other technicians and allowed for the service department to run outweighed Plaintiff's non-managerial duties in importance. Moreover, some of Plaintiff's non-managerial duties necessarily flowed into his managerial duties. For example, although Plaintiff states that handling customer complaints over the phone was a non-managerial activity, this, at least once, led to him disciplining one of his service technicians. *Id*. at 38; *see also* (D.E. No. 34-1, Exh. 7 to Plaintiff's Depo.). Thus, this factor weighs in favor of finding Plaintiff's primary duty was management.

Next, the Court considers the amount of time spent performing exempt work. Plaintiff states in his affidavit that the majority of his work "involved . . . [his] own performance of ordinary production" and that "[m]anagement duties comprised approximately only ten (10) to twenty (20) percent of my usual job duties." (D.E. No. 42-1, Plaintiff's Aff. at ¶¶ 18, 19). This statement is somewhat conclusory, but the Court will consider this factor as weighing in favor of Plaintiff's argument that he is not exempt. The regulations, however, also state that while the

amount of time spent performing exempt work can be a "useful guide . . .[t]ime alone" is not the "sole test." 29 C.F.R. § 541.700(b). "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id*. Here, as discussed above and below, the other factors do support a finding that management was Plaintiff's primary duty.

Next, the Court considers Plaintiff's relative freedom from direct supervision. Defendants have offered the affidavits of Defendant Warrington and Marla Share, the interim Chief Financial Officer of Docutek, which state that Plaintiff did not have a supervisor. (D.E. No. 33-1, Warrington's Aff. at ¶ 15); (D.E. No. 33-2, Share Aff. at ¶ 12). In these affidavits Warrington and Share also state that Plaintiff set his own work schedule and that he was "fully in charge of Docutek's service department . . . [exercising] independent judgment in that regard." (D.E. No. 33-1, Warrington's Aff. at ¶ 16); (D.E. No. 33-2, Share Aff. at ¶ 13). Plaintiff has not disputed this evidence and states only in his affidavit that he was under certain other employees on the "organizational chart." (D.E. No. 42-1, Plaintiff's Aff. at ¶ 21). This does not create a genuine issue of material fact.

There is also evidence in the record that a number of Plaintiff's recommendations were subject to the veto of Defendant Staller or someone else he characterized as working "up front." (D.E. No. 34-1, Plaintiff's Depo. at 33, 35, 38-39, 55-56). This, however, does not demonstrate that Plaintiff was subject to close supervision. A manager's recommendations with regard to hiring and firing are often subject to veto, however, this does not mean, especially as it is clear in this case that most of Plaintiff's recommendations were given great weight, that Plaintiff was closely supervised in his running of the service department. Thus, this factor weighs in favor of

finding Plaintiff's primary duty was management.

Finally, the Court considers the relationship between Plaintiff's salary and the wages paid to other employees for the kind of nonexempt work performed by Plaintiff. Plaintiff testified that it was standard for a service technician to start at a salary of $39,000.00 and then after ninety days to receive an increase to $41,000.00 (D.E. No. 34-1, Plaintiff's Depo. at 34). In comparison, Plaintiff testified that initially his salary was $48,000 and subsequently his salary was increased to $53,000.00. *Id*. at 23, 42.[7] Thus, for his base salary, Plaintiff was paid anywhere from $7,000.00 to $12,000.00 more than a regular service technician.[8] Thus, it is clear that Plaintiff received extra compensation due to his position as service manager, and this factor also weighs in favor of finding that Plaintiff's primary duty was management.

In balancing the factors, the Court finds that there are no genuine issues of material fact and that Plaintiff's primary duty was management. Although Plaintiff has stated in his affidavit that only ten to twenty percent of his activities were management activities, the other factors including the importance of Plaintiff's exempt activities, Plaintiff's relative freedom from direct supervision, and Plaintiff's increased salary all weigh in favor of finding that Plaintiff's primary

---

[7]At some point Plaintiff also started receiving commissions on his service billings. It is not clear from the record whether the other service technicians also received this commission. Thus, the Court has not considered this as any sort of extra benefit tied to Plaintiff's position as a service manager.

[8]The Court acknowledges that Marla Share, the interim Chief Financial Officer of Docutek, stated in her affidavit that
> Plaintiff was always paid substantially more than the other employees in the service department. Plaintiff was paid almost twice as much as the average service technician. The assistant service manager even made approximately $10,000 less than Plaintiff.

(D.E. No. 33-2, Share's Aff. at ¶ 16). The Court, however, takes the evidence in the light most favorable to Plaintiff, and Plaintiff testified to the following figures discussed above.

duty was management. Here, while Plaintiff performed non-exempt activities, management was still Plaintiff's primary responsibility as while performing these non-exempt tasks Plaintiff was interviewing potential service technicians, making hiring recommendations, making recommendations regarding employees's pay and position, directing the work of employees, appraising employees's productivity and efficiency for the purpose of recommending promotions, disciplining employees, making recommendations that certain employees be terminated, and apportioning work among employees. *See* 29 C.F.R. § 541. 700(c) (stating as an example that "assistant managers in a retail establishment who perform[ed] exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register."); *Posely v. Eckerd Corp.*, 433 F.Supp.2d 1287, 1302 (S.D.Fla. 2006) (finding that although store managers performed non-exempt labor eighty percent of the time, their primary duty was still management); *Debrecht, Bell & Jackson v. Osceola County*, 243 F. Supp. 2d 1364, 1370 n.11, 1370-72 (M.D. Fla. 2003) (finding that the primary duty of battalion chiefs in an emergency services department was still management even though they spent eighty-five percent of their time performing non-exempt tasks because the chiefs supervised the day-to-day operations of personnel, commanded a fire or emergency scene, prepared performance evaluations for personnel, disciplined personnel, and gave input with regard to the hiring and firing of employees).

### 2. Customarily and Regularly Directed the Work of Two or More Other Employees

Next, the Court also finds that no genuine issues of material fact remain as to whether Plaintiff customarily and regularly directed the work of two or more other employees. Plaintiff argues in his response that he did not regularly direct the work of two or more other employees because "[t]he technicians in the service department were left to accomplish their duties without much if any oversight from Plaintiff." (D.E. No. 42 at 6). Plaintiff, however, has not cited any evidence in the record to support this argument, and this statement is insufficient to defeat summary judgment. *See Mahone v. Ben Hill County School Sys.*, 377 Fed. Appx. 913, 915 (11th Cir. 2010) (noting that a brief in response to a motion for summary judgment "does not qualify as evidence to be considered under the summary judgment record."). Here, the record shows that during the relevant time period when Plaintiff oversaw the service department, there were anywhere from fifteen to twenty-five employees in the service department. (D.E. No. 34-1, Plaintiff's Depo. at 26-27). The record also shows that Plaintiff both directed and apportioned the work of the technicians working in the service department. *Id*. at 29, 31-33, 47. Plaintiff also testified that he communicated on a daily basis with his technicians. *Id*. at 28. Thus, the Court finds that this element has been met, and there are no genuine issues of material fact with regard to this element.

### 3. Suggestions and Recommendations as to the Hiring, Firing, Advancement or Promotion of Other Employees

Finally, the Court also finds that there are no genuine issues of material fact with regard to the fourth element in that Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given particular

weight. Plaintiff interviewed potential service technicians. *Id*. at 34-36. Defendant Staller also interviewed the candidates, however, a majority of the time the interview with Plaintiff was longer. *Id*. at 36.[9] Staller would then confer with Plaintiff with regard to the interviewee. *Id*. at 35. Although Plaintiff did not actually fire employees, he did recommend that employees be fired. *Id*. at 38-39, 55-56; *see also* (D.E. No. 42-1, Plaintiff's Aff. at ¶¶ 10, 11). It was only on "a couple of occasions" that Plaintiff's recommendation was overruled. (D.E. No. 34-1, Plaintiff's Depo. at 39). Plaintiff also made recommendations with regard to pay and position, and his superiors usually did what he recommended. *Id*. at 33. Thus, the Court also finds there are no genuine issues of material fact with regard to this element, and the Court finds that Plaintiff is an exempt employee in that he meets all the requirements of a bona fide executive. Therefore, the Court grants summary judgment on Plaintiff's FLSA claims in Counts I, III, and IV.

### B.     State Claim Relating to Unpaid Commissions in Count II

Defendants have also moved for summary judgment on Plaintiff's claim in Count II under section 448 of the Florida Statutes relating to his unpaid commissions. It is within this Court's discretion to exercise supplemental jurisdiction over pendent state claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). However, the United States Supreme Court has stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The United States Supreme Court has since explained that this statement in *Gibbs* is not a mandatory rule, but rather

---

[9]Plaintiff testified that in "one out of four interviews" or twenty-five percent of the time, Staller's interview would last longer. (D.E. No. 34, Plaintiff's Depo. at 36).

> [t]he statement simply recognizes that in the usual case in which all federal-law claims are are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

In considering this balance of factors, along with the fact that all federal claims have been dismissed from this action, this Court finds that the balance of factors, including judicial economy, convenience, fairness, and comity, weigh in favor of dismissal of this claim. Thus, the Court dismisses Count II without prejudice to Plaintiff raising this claim before the state court. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendants' Motion for Summary Judgment (D.E. No. 33) is **GRANTED in part**. Defendants' motion is granted as to Counts I, III, and IV. Count II is dismissed without prejudice. A final judgment with regard to Counts I, III, and IV shall be entered separately.

2. This Case is **CLOSED**.[10]

DONE AND ORDERED in Chambers at Miami, Florida, this 12 day of November, 2010.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

---

[10] This Order does not affect the Court's previous award of sanctions. Defendants still must comply with the Court's Orders. *See* (D.E. Nos. 46 & 54).